ATLANTIC PENINSULAR HOLDING COMPANY v. AUGUST
OENBRINK

182 So. 812.
En Banc.
Opinion Filed June 30, 1938.
Rehearing Denied July 28, 1938.

E. J. L'Engle, J. W. Shands and *Wideman, Wardlow & Caldwell,* for Plaintiff in Error.

W. Terry Gibson and *Joseph P. Lea, Jr.,* for Defendant in Error.

CHAPMAN, J.—On December 2, 1935, plaintiff filed in the Circuit Court of Palm Beach County, Florida, an amended declaration claiming damages for the negligent death of Ralph Oenbrink, a boy twelve years of age, caused by a fall from the fourth floor of the Blue Heron Hotel, an unfinished structure situated about one hundred feet from the Atlantic Ocean. While the child was playing on the concrete floor near an open shaft, the concrete floor collapsed due to latent defects, which caused him to fall and plunge to the bottom of the unguarded shaft to his death. It was alleged that the defect which caused the boy's death was a latent one, and that the defendant knew,

or by the exercise of due care should have known, that children would be attracted to the unfinished hotel, but negligently failed or omitted to prevent it.

The defendant filed to said amended declaration pleas: (1) not guilty; and (2) contributory negligence. The cause was tried by a jury and verdict and judgment entered for the plaintiff in the sum of $4,000.00. The transcript was perfected and the cause is here for review on several assignments of error.

On January 2, 1936, defendant filed a demurrer containing a number of grounds directed to the amended declaration. One ground was that the amended declaration failed to allege a cause of action. On August 18, 1936, the lower court entered an order overruling the said demurrer and the ruling is assigned as error in this Court. Counsel for plaintiff in error contends that the unfinished structure known as the "Blue Heron Hotel" failed to come within the attractive nuisance rule, which does not apply to railroad depots, mining camps, a stable, a vacant house with open doors, a vacant house in dilapidated condition, or a building under construction, and to sustain their position cite: Wite v. Stifel, 126 Mo. 295, 47 Am. St. Repp 668; State, *ex rel.* Lease, v. Bealmear, 149 Md. 10, 130 Atl. 66; Grindley v. McKechnie, 163 Mass. 494, 40 N. E. 764; Southern Cotton Oil Co. v. Pierce, 145 Ga. 130, 88 S. E. 672; City of Shawnee v. Cheek, 41 Okla. 227, 137 Pac. 724, 51 L. R. A. (N. S.) 672, Ann. Cas. 1915C 290; Olsen v. Fennia Realty Co., 246 N. Y. 641, 159 N. E. 684; O'Callaghan v. Commonwealth Engineering Corp., 247 N. Y. 127, 159 N. E. 884, 60 A. L. R. 1424; and other authorities. We have given due consideration to each of the cited authorities.

If one has on his premises something that is dangerous to children of tender age, of such character that it is likely

that children themselves can create danger out of it, when it is attractive, alluring or enticing to them, he owes the duty as a matter of common humanity to protect that thing from danger to children. The doctrine of "attractive nuisance" has been considered, approved and adopted by the Supreme Court of Florida. See: Stark v. Holtzclaw, 90 Fla. 207, 105 So. 330, 41 A. L. R. 1323.; May v. Simmons, 104 Fla. 707, 140 So. 780; Peters v. City of Tampa, 115 Fla. 666, 155 So. 854. See also Osborne v. Atchison Ry. Co., 86 Kan. 440, 121 Pac. 364; Oglesby v. Metropolitan & West Side Elec. Ry. Co., 219 Ill. App. 321. We hold that the declaration states a cause of action.

We fail to find error in the order overruling the demurrer or denying the motion for compulsory amendment to the amended declaration or to strike described portions thereof.

It is next contended that the lower court erred in denying defendant's motion for a directed verdict at the close of plaintiff's testimony. The grounds of the motion were: (a) failure to prove allegations of the declaration; (b) the evidence failed to show that the structure was an attractive nuisance; (c) the defendant had not been shown to breach its duty to the plaintiff.; (d) plaintiff's intestate was guilty of contributory negligence. When the respective parties concluded the taking of testimony, the defendant, through counsel, again moved the court for a directed verdict on substantially the same grounds of the first motion. Each of these motions were by the lower court denied. These motions and grounds 2, 3, 6, 7, 8, 9 and 10 of defendant's motion for a new trial can be considered in one assignment. The lower court by overruling the motions of the defendant for a directed verdict was of the opinion that the evidence was sufficient to be considered by the jury under appropriate instructions. We have read the testimony as

disclosed by the transcript and considered the exhibits offered in the lower court. The deceased, with his brother and two other boys, went fishing and failing to catch fish, went bathing near the hotel in question, and thence to explore, boy like, the unfinished hotel. They played around it and when on the fourth floor the three boys, in single file, were approaching an unguarded shaft, the first boy passed the shaft but the deceased stumbled or fell when the floor gave way, and being unable to regain his balance, fell into the unguarded shaft. While it is true that a conflict of evidence occurred on many material points, these conflicts were to be considered by the jury under appropriate instructions by the trial court. A careful consideration of all the evidence in the case convinces us that the lower court ruled correctly on these motions, as well as the sufficiency of the evidence and the weight thereof. The disputed facts under our system were to be settled by a jury.

This Court has by an unbroken line of decisions held that it was error to direct a verdict on any question submitted to evidence that should have been considered by the jury. See Folsom v. Hoffman, 100 Fla. 1369, 131 So. 318. A verdict should be directed for one party only when the evidence is legally insufficient to sustain a verdict for the opposite party. Aberson v. Atlantic Coast Line R. Co., 68 Fla. 196, 67 So. 44. If the evidence is conflicting or will admit of different reasonable inferences, or if there is evidence tending to prove the issue, it should be submitted to the jury as a question of fact to be determined by them, and not taken from the jury and passed upon by the court as a question of law. Cameron, etc., Co. v. Law-Engle Co., 98 Fla. 920, 124 So. 814; McKinnon v. Johnson, 57 Fla. 120, 49 So. 910; Starks v. Sawyer, 56 Fla. 596, 47 So. 513; Florida Cent., etc., R. Co. v. Williams, 37 Fla. 406, 20 So. 558; Southern Exp. Co. v. Williamson, 66 Fla. 286, 63 So.

433; L. R. A. 1916C 1208; Bass v. Ramos, 58 Fla. 161, 50 So. 945, 138 Am. St. Rep. 105; Wood Lbr. Co. v. Gipson, 63 Fla. 316, 58 So. 364; Paul v. Commercial Ban, 69 Fla: 62, 68 So. 68; Johnson v. Louisville & N. R. Co., 59 Fla. 305, 52 So. 195; Williams v. Sherry, 94 Fla. 998. 114 So. 849; German-American Lbr. Co. v. Brock, 55 Fla. 577, 46 So. 740; Atlantic Coast Line R. Co. v. Pelot, 62 Fla. 121, 56 So. 496. See King v. Cooney-Eckstein Co., 66 Fla. 246, 63 So. 659, Ann. Cas. 1916C, 163; Gunn v. Jacksonville, 67 Fla. 40, 64 So. 436;. Davis v. Ivey, 93 Fla. 387, 112 So. 264; Florida East Coast Ry. Co. v. Hayes, 56 Fla. 589, 64 So. 274; Jacksonville v. Glover, 69 Fla. 701, 69 So. 20; Gravette v. Turner, 77 Fla. 311, 81 So. 476; Gulf Refining Co. v. Ankeny, 102 Fla. 151, 135 So. 521.

It is next contended that the following charge given by the trial court was reversible error:

"You are instructed that if you find a verdict in favor of the plaintiff you should assess such damages in his favor as will compensate plaintiff for the amount of money he has actually expended as a direct result of the death of his son; and also such further sums as would be the value at the date of the trial of fair compensation for services which in reasonable probability the child would have rendered to the parents during the period from the wrongful death to the date when the child would have become twenty-one years of age. And in addition thereto, such sums as you may determine would be fair and just as compensation for the mental pain and suffering of the father, and for loss or injury resulting to the father by reason of the mother's mental pain and suffering which were occasioned by the death of Ralph Oenbrink. And in regard to the matter of mental pain and suffering the Court charges you that it is not necessary for the plaintiff to prove·to you any definite amount of damages; but that the fixing of the

damages in such cases is for the jury to determine in the exercise of its sound judgment in the light of all facts as shown by the testimony. Furthermore, the total amount of damages for the three elements stated herein should not exceed $50,000.00  Of course plaintiff can recover nothing, unless warranted by the proof and the law."

It is argued that Section 7049 C. G. L., authorizes a recovery by plaintiff for (a) loss of services of a minor child; (b) mental pain and suffering of both parents plaintiff; and that the charge, *supra,* as given instructed a recovery for the loss of services for *both* parents, when as a matter of law only the father could recover for the loss of services in the case at bar. The verdict rendered herein was for the sum of $4,000.00, which includes mental pain and suffering for both parents and the loss of services for the minor child. We do not know the value of mental pain and suffering for both parents as contained in the verdict, or the value of the loss of services of the minor child as expressed in the verdict, but we do know that the sum of $4,000.00 for mental pain and suffering on the part of the parents is not excessive. While it is true that the charge of the lower court so as to include *parents* was error, we do not think it was reflected in the verdict. See Section 4499 C. G. L.

It is next contended that a map or blue print exhibited to the jury and introduced in evidence by the plaintiff over the objection of the defendant was error. We do not think this assignment has merit. See Adams v. State, 28 Fla. 511, 10 So. 106.

In an order overruling the motion for a new trial made by the defendant below the trial court said:

" 'Defendant makes a strong argument upon the insufficiency of the evidence to warrant a verdict for the plain-

tiff. Had I been upon the jury, it is entirely possible that I might not have concurred in this particular verdict. At the same time, I am quite thoroughly satisfied that there is ample evidence to support the verdict, and that the verdict is not contrary to the weight of the evidence, as may have been determined by the jury. Should I grant a new trial in this particular case, it would mean, I believe, that the Court has the right to supplant the verdict of the jury, merely because the Court feels that it might have arrived at a different verdict. I do not believe that to be the law.' "

A motion for a new trial is addressed to the sound judicial discretion of the trial court and unless there is a clear abuse of such discretion, the ruling of the trial court thereon will not be disturbed. It has not by the motion for a new trial as presented here been made to appear that the lower court abused its discretion in overruling or denying the said motion of a new trial. See: Ruff v. Georgia, etc., Ry. Co., 67 Fla. 224, 64 So. 782; Carney v. Stringfellow, 73 Fla. 700, 74 So. 866; Lockhart v. Butt-Landstreet, 91 Fla. 497, 107 So. 641; Aberson v. Atlantic Coast Line R. Co., 68 Fla. 196, 97 So. 44; Anthony Farms Co. v. Seaboard Air Line Ry. Co., 67 Fla. 168, 67 So. 913; Woods v. Atlantic Coast Line R. Co., 100 Fla. 908, 130 So. 601; Cheyney v. Robers, 77 Fla. 324, 81 So. 475; De La Vallina v. De La Vallina, 90 Fla. 905, 107 So. 339; Elks Club v. Adair, 95 Fla. 415, 116 So. 26; Walters Realty Co. v. Miami Tripure Water Co., 100 Fla. 221, 129 So. 763.

The testimony shows that the unfinished building was on the defendant's land and situated on what is commonly known in that vicinity as "Singer's Island," and that Singer's Island consists of a narrow strip of land north and south between Lake Worth and the Atlantic Ocean. The unfinished structure was standing about two hundred feet from the Ocean and about one-half mile from Lake Worth.

The building was from seven to nine stories high and consisted largely of steel and concrete, with large holes in the concrete floors for elevators, stairways, water pipes and electric conduits. The metal laths upon which the fourth floor rested had deteriorated and the latent defects were unknown to the deceased, and while playing upon it, the floor gave way, which caused the boy to fall and plunge into the unguarded elevator shaft.

It is also contended that because of the particular location of the Blue Heron Hotel, its isolation from the neighboring towns, and its non accessibility on the part of the children, that no legal liability attaches in this case. The answer to this question is found in the testimony offered on the part of the plaintiff, which made it a question of fact to be decided by the jury.

We have given the entire record here careful consideration but fail to find reversible error, and for this reason the judgment appealed from is affirmed.

WHITFIELD, BROWN and BUFORD, J. J., concur.

## ON PETITION FOR REHEARING.

CHAPMAN, J.—On petition for rehearing it is suggested that the Court overlooked some of the material issues involved, viz.: (1) the proximate cause of the death of Ralph Oenbrink; (2) that the death of the boy was accidental and not due to the negligence of the defendant in that his death was caused by a fall and not to the condition of the floor of the Blue Heron; (3) that the floor alleged to have broken when struck by the deceased while playing was not shown to be defective in quality of construction and its condition was discernible, and for these reasons there is no liability on petitioner; (4) that the acts and conduct of the deceased shortly prior to the fall contributed to his said death; (5) the inaccessible location of the Blue Heron

on Singer Island and for this reason it was not an attractive nuisance for children; (6) that the deceased, as a matter of law, was a trespasser on the property of the petitioner when killed and for this reason there was no liability on it for the death of the boy.

. The testimony in this case shows that the deceased, with other boys, went fishing in the vicinity of the Blue Heron Hotel located in Singer Island between Lake Worth and the Atlantic Ocean; the construction of the Blue Heron Hotel started around 1926 or 1927 and reached between seven and nine stories and remained unfinished; the boys failed to catch fish and went for a swim in the ocean and then for an exploration of the nearby Blue Heron Hotel; they were playing on the fourth floor when the deceased · became unbalanced and fell and rolled in an unguarded shaft unto his death. The cause of the fall, it was alleged, was the condition of the floor which gave way, causing him to lose his balance. While many of the material issues of the case were sharply controverted, not only by the testimony of the witnesses, but by the contentions and argument of counsel engaged in the trial of the case, we feel that the ground submitted for a rehearing are questions of fact to be settled by a jury.

This court by previous decisions has held where on the evidence adduced there is room for a difference of opinion between reasonable men as to the existence of facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion in such cases that should prevail, and not primarily the views of the Judge. See Gunn v. City of Jacksonville, 67 Fla. 40, 64 So. 435; Gravette v. Turner, 77 Fla. 311, 81 So. 476.

We feel that substantial justice was awarded in the lower court. The petition for a rehearing is denied.

WHITFIELD, BROWN and BUFORD, J. J., concur.