105 So.2d 580 (1958)
LARNEL BUILDERS, Inc., a Florida corporation, Appellant,
v.
James C. MARTIN, as natural father, next friend and surviving father of Carl Martin, deceased Infant, Appellee.
No. 58-6.
District Court of Appeal of Florida. Third District.
September 30, 1958.
Rehearing Denied October 29, 1958.
*581 Dixon, DeJarnette, Bradford & Williams, Miami, for appellant.
Eaton & Achor, Miami, for appellee.
CARROLL, CHAS., Chief Judge.
Appellee James C. Martin filed an action under § 768.03, Fla. Stat., F.S.A., charging appellant with negligently causing the death of Carl Martin, his minor child, aged seven. The trial resulted in a jury verdict of $26,000 for plaintiff. This appeal is from the judgment entered on that verdict.
In appellant's brief it has grouped the argument backed by twenty assignments of error into three points, contending (1) that the circumstances did not present or constitute an attractive nuisance, (2) that the court should have granted appellant's motion, made at the trial, to include a defense of contributory negligence, (3) that it was error to allow to be exhibited in evidence a motion picture showing the deceased child's parents with others at the scene.
The complaint alleged that the defendant was engaged in developing "a large tract of substandard wasteland into a subdivision for homesites," and had obtained permission from the county commission to excavate on the land to provide a lake and drainage canal. Regarding negligence, the complaint contained the following:
"3. Prior to January 2, 1957 the defendant began to excavate for a deep drainage canal in Block 46 of said *582 above-described property. The defendant knew that said excavation was adjacent to a housing development near a school ground and where many small children lived, and in an area where said children could see and be attracted to the huge pile of loose sand and gravel, a novel and unique sight, which was piled on the bank alongside the excavation. The defendant placed the pile of sand and gravel in such manner as children and adults alike could not see or know the existence of a water filled excavation on the far side of said sand and gravel pile. The defendant knew the excavation was filled with water in excess of ten feet in depth.
"4. The defendant piled the huge pile of sand and gravel in such negligent and careless manner that Carl Martin, a child of tender years, was attracted to it on January 2, 1957. The defendant negligently and carelessly failed to provide signs, warnings, watchmen, or other means of protection to the children playing in the area.
"5. On January 2, 1957 Carl Martin, aged seven years, was attracted to said huge pile of sand and gravel and while there fell into the deep waters and drowned."
The answer admitted the development undertaking, the existence of the canal and spoil bank, and that the Martin child fell in the water and was drowned. The answer denied the other material allegations and, for defense, averred the following:
"3. In answer to paragraph 2, the defendant says that the land was level in one sense of the word, in that it was not mountainous; but on the other hand, it was rocky and not perfectly level.
"4. In answer to paragraph 3, the defendant admits that the excavation made was in vacant property adjacent to a housing development, but not immediately adjacent thereto. Between the housing development and the excavation there was a highway, a strip of land more than one hundred feet wide between the highway or roadway and the canal. Defendant says that in excavating the canal, the spoil bank was thrown up between the canal and the roadway, and the spoil bank consisted of rock, gravel and some sand; but that it was not a novel or unique sight, and whether or not any person knew water existed in the excavated place depended upon how the person approached the canal.
* * * * * *
"7. Further answering the complaint, the defendant says that the deceased was not attracted to the place where he met his death by reason of the water and sand, and that he came to his death by reason of having lost his balance while throwing rocks at a stick that the deceased had placed in the water."
The trial court was not in error in denying the defendant's motion for directed verdict, and in permitting the case to go to the jury on the attractive nuisance doctrine. The deceased child and a companion were attracted by the high mound of spoil and went there to play. The steep slope on the inner side, running directly into the canal, created a hazardous condition, the portent of which was fulfilled when the deceased boy slipped or fell into the deep and murky water of the adjacent canal and was drowned. The facts brought the case within the doctrine of attractive nuisance. See Peters v. City of Tampa, 115 Fla. 666, 155 So. 854; Allen v. William P. McDonald Corp., Fla. 1949, 42 So.2d 706; Ansin v. Thurston, Fla.App. 1957, 98 So.2d 87. Cf. Newby v. West Palm Beach Water Co., Fla. 1950, 47 So.2d 527.
*583 We find unconvincing the arguments of appellant that the spoil mound, coupled with the canal into which it sloped, did not represent an attractive nuisance because the mound was of rock and gravel with little sand, and because its slopes were surfaced with sharp rocks. Though soft and white sands may be inviting (Allen v. William P. McDonald Corp., supra), a mound or "mountain-like" mass is a known attraction to children whether it be of sand, gravel, rock, coal or other such substance on and over which children may romp and climb. Such a high mound becomes a novelty and holds added attraction where the terrain normally is flat.
Turning to the question regarding contributory negligence, it appears that at the trial, after the plaintiff had rested, defendant's attorney moved for leave to amend the answer to plead contributory negligence of the deceased child. The trial judge denied the motion. We will not hold the trial court in error for regarding the seven year old deceased as being a child of tender years, so that neither the child's trespass nor his negligence were to be counted against him under the applicable attractive nuisance doctrine.
In Johnson v. Wood, 155 Fla. 753, 21 So.2d 353, 355, the Supreme Court, speaking through Mr. Justice Terrell, referred to the English case where the doctrine of attractive nuisance had its origin, and it is noted that it was a case of injury to a seven year old child. In that portion of the opinion in the Johnson case, the Supreme Court said:
"The attractive nuisance doctrine is an exception to the rule of nonliability for injury to infant trespassers. Unless the circumstances bring them within the attractive nuisance rule, the doctrine of nonliability for injuries to trespassers applies to infant trespassers in the same degree that it does to adult trepassers. The doctrine had its origin in the English case of Lunch v. Nurdin, 1 Q.B. 29, 41 E.C.L 422, 113 Reprint 1041. This was a case in which the owner left his horse and cart unattended in the street. A child of seven got in the cart and a second child drove the horse down the street; the first child fell from the cart and the wheel ran over and broke his leg. The owner was held liable though the child was a trespasser and contributed to his injury. It was further held that the negligence vel non of the owner was one for the jury. The doctrine was first recognized in this country by the Supreme Court of the United States in Sioux City & Pacific Ry. Co. v. Stout, 17 Wall. 657, 21 L.Ed. 745, a case in which a child of tender years was injured while playing with other children on a railroad turntable; hence the turntable doctrine. The very reason for the doctrine is that while the danger of the instrumentality is apparent to one of mature years, it is not so to one of tender years but may in fact be so enticing to them that it amounts to an invitation. Some of the cases hold that the child is not a trespasser under such circumstances."
The cases are not wanting in which the attractive nuisance doctrine has been applied with respect to children of seven years and older. Compare Atlantic Peninsular Holding Co. v. Oenbrink, 133 Fla. 325, 182 So. 812, which involved a twelve year old boy.
On the third point, as to the moving picture, we observed the film when run before this court at the time of the argument, and we consider that the question raised respecting it was without merit.
Having examined the record and considered the briefs and arguments of counsel, and finding no error established, the judgment appealed from is
Affirmed.
HORTON and PEARSON, JJ., concur.